Woolley, &c., v. Louisville Southern Railroad Company.

CASE 36—PETITION EQUITY—MAY 24.

# Woolley, &c., v. Louisville Southern Railroad Company.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. ELECTIONS.—Receiving illegal votes does not render an election void, provided the illegal votes can be eliminated and the true result of the legal votes ascertained.

2. SAME.—Where the question as to whether a city should make a subscription to the capital stock of a railroad company was submitted by the mayor and general council to the voters of the city in accordance with the requirements of an Act of the Legislature, a circular issued by the the mayor to the officers of the election, directing them to receive certain votes which were illegal, did not form a part of the submission of the question to the voters of the city; and, therefore, did not violate the rule that there must be a submission to the legal voters, which is a condition precedent to the validity of all elections.

3. SAME—PLEADING.—In an action in equity to have the election and subscription thereunder declared void, an allegation that the railroad company bribed "a large number of voters," and that a majority of the voters who voted at said election "were not unbribed," is not equivalent to an allegation that a majority of those voting in favor of the subscription were bribed; and in the absence of anything in the petition to show that the election was not legally ordered, or that a majority of the

legal votes was not for the subscription, a demurrer to the petition was properly sustained.

R. A. THORNTON FOR APPELLANTS.

1. The election and, consequently, the subscription were each illegal and void, because the "amount, terms and conditions of the proposed subscription" were not submitted to a vote of that class of voters possessing the qualifications prescribed by the statute, namely: the "legal voters of the city of Lexington;" but were submitted to a wholly different and much more numerous class of voters, who did not possess the qualifications required by the statute to entitle them to vote upon the said question. (Session Acts 1867, vol. 1, p. 433; Session Acts 1869–70, vol. 2, p. 70; Session Acts 1881, vol. 2, p. 610; Session Acts 1885–6, vol. 1, p. 413; Buckner, &c., v. Gordon, &c., 81 Ky., 665.)

2. As the "amount, terms and conditions of the proposed subscription" were not submitted "to a vote of the legal voters" of the city of Lexington, the election, subscription and the issuing of the bonds were each illegal. (Marshall v. Donovan, &c., 10 Bush, 694; Slack v. M. & L. R. Co., 13 B. M., 22; Blackwell on Tax Titles, 2d ed., pp. 43, 49, 51 and 630; Dehart, &c., v. Wilson, &c., 6 Mon., 581; Mitchell and Davis' Adm'rs v. Sproul, 5 J. J. Mar., 267; Powell v. Tuttle, 3 Comst., 301; County Court of Fayette v. Lex. & B. S. R. Co., 17 B. M., 343; Pierce on Railroads, 99; Wood on Railway Law, vol. 1, p. 265; People v. Smith, 45 N. Y., 772; Merritt v. Port Chester, 71 N. Y., 309; County of Richland v. People, 3 Brad., 210; Harding v. Rockford, &c., R. Co., 65 Ill., 90; Winston, &c., v. Tenn. &c., R. Co., 1 Jere. Baxter (Tenn.), 76; Endlich on Int. of Statutes, sec. 432; 12 Iowa, 153; Bullock, &c., v. Curry, &c., 2 Met., 171; Shelby County Court v. Cumberland & Ohio R. Co., 8 Bush, 209; Mercer County Court v. Ky. River Nav. Co., 8 Bush, 303; Judge of Campbell County Court v. Taylor, &c., 8 Bush, 206; Bowling Green & Madisonville R. Co. v. Warren County Court, 10 Bush, 711; Clark v. Crane, 5 Mich; Daveiss County Court v. Howard, &c., 13 Bush, 101; Rich v. Mentz, 134 U. S., 632.)

·3. Where the law requires a registry of the voters to be made, or a check list to be used by the officers of the election, for the purpose of preventing indiscriminate and illegal voting, and the provisions of the law are disregarded, an election held under such circumstances will be void, and the whole vote rejected. (State v. Stumpf, 23 Wis., 630; Cooley on Const. Limit., p. 758, sec. 602, 4th ed.; Nefzger v. The Davenport and St. Paul Railway, 36 Iowa, 642; People v. Kopplekon, 16 Mich., 342; State of Missouri ex rel. Ensworth v. Albin, et al., 44 Mo., 346; Torrey v. Milbury, 21 Pick., 67; Cooley on Taxation, p. 216, ed. of 1876; Beaty v. Knowler, 4 Peters, 152; Vanhorne v. Dorrance, 2 Dallas, 303; Doughty v. Hope, 3 Denio, 594; French v. Edwards, 13 Wall., 511.)

4. Injunction is the proper remedy. (Lou. & Nash. R. Co. v. Warren

County, 5 Bush, 243; Gates v. Barrett, 79 Ky., 295; Redd, &c., v.
Supervisors, 31 Gratt., 695.)

BULLITT & SHEILD for appellee.

1. An election, held at the proper time and place by duly appointed officers,
pursuant to a statute, is a submission to a vote of the people as required
by its terms. The reception of illegal votes by *mistake* or by *intention*,
in *any numbers*, does not, *per se*, invalidate the election. (1 Dillon
Mun. Corp., sec. 138; McCrary on Elections, sec. 444; *Idem*, sec. 305;
Naar on Suffrage and Elections, pp. 126, 127 and 128; Cooley on
Const. Limit., *p. 621; Parish v. Stearns, 21 Pick., 148; Trustees v.
Gibbs, 2 Cush., 39; Buckner v. Gordon, 81 Ky., 665, Bullock v.
Curry, 2 Met., 171; Campbell v. Taylor, 8 Bush, 206; Nefzger v.
Railroad, 36 Iowa, 642; Morrill v. Haine, 2 N. H., 246; Missouri v.
Albin, 44 Mo., 346; Littlefield v. Green, Brightly, p. 493; Fayette
County v. L. & B. S. R. Co., 17 B. M., 336; Allison v. Harrod's Creek
R. Co., 9 Bush, 247; Russell v. The State, 11 Kan., 320; State v.
Board of Com'rs, 35 Kan., 640; Piatt v. The People, 29 Ill., 55;
Scranton Borough Election, Brightly's Leading Cases, p. 455.)
2. The failure of tax-payers of the city of Lexington to pay their poll-tax
does not exclude them from voting upon a *question of taxation*. (Gen.
Stats., chap 33, art. 1, sec. 1.)
3. As it does not appear from the petition that the alleged illegal votes
affected the result of the election, the demurrer was properly sustained.
4. The Legislature having appointed a particular tribunal to canvass and
determine the result of the vote, the chancellor has no jurisdiction to
inquire into or to reverse the finding of that tribunal upon the ground
that illegal votes have been received. (Trustees v. Garvey, 80 Ky., 164;
Clark v. Rogers, 4 Ky. Law Rep., 929.)

JOHN T. SHELBY, CHARLES J. BRONSTON on same side.

1. The opinion or direction of the mayor as to who were entitled to vote
did not affect the matter of the "*submission*" of the proposition, as the
advice or direction of the mayor can not affect the question any more
than if it had been given by any other citizen.
2. When a matter has been submitted under proper conditions, by the
proper authority, in proper terms and to the proper body of voters, and
the election is held by the proper persons and its results returned, certi-
fied to and declared by the proper officers, the court has no power to
investigate the point as to whether, in the taking of the vote, illegal or
improper votes were received. (Trustees v. Garvey, 80 Ky., 164;
Clark v. Rogers, 4 Ky. Law Rep., 929.)
3. The expression "legal voters," used in the subscription act, does not
mean those who were qualified by payment of poll-taxes to vote for cer-
tain city officials under the charter, but means those residents of the
city of Lexington who, under the general law of the State, were "legal

voters" in that city. (Acts 1881-2, vol. 2, p 608; Acts 1885-6, vol. 1, p. 413.)

4. The court will not hear one who demands relief upon the ground that illegal or bribed votes were received at an election, unless his complaint shows that the result of the election was brought about by the receipt of such votes, or would have been different had they not been received. (McCrary on Elections, sec. 546 (3d ed.); Prince v. Skillin, 19 Am. Law Reg. (N. S.), 708; s. c. 36 Am. Rep., 333; Trustees v. Gibbs, 2 Cush., 45; First Parrish, &c., v. Stearns, 21 Pick., 154; People v. Tuthill, 31 N. Y., 562; People v. Cicott, 97 Am. Dec., 143; Note to People v. Bates, 83 Am. Dec., 750; Note ito People v. Pease, 84 Am. Dec., 268.)

5. Whatever may be the correct doctrine as to the power of the chancellor to purge the polls, and whatever may be the true meaning of the term " legal voters," as used in the Act in question, the petition utterly fails to state any case entitling plaintiffs to relief, because it does not show that the result of the election was affected by the alleged improper votes.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellants, as citizens and tax-payers of the city of Lexington, Ky., seek, by petition in equity, to have the election and subscription of one hundred thousand dollars in city bonds by said city to the appellee, declared void.

The General Assembly of the State of Kentucky, by an Act approved May the 3d, 1888, authorized the city of Lexington to subscribe as much as one hundred thousand dollars to the capital stock of the appellee, to be used in the construction of its road from Lexington to the town of Lawrenceburg, Ky. As a precedent condition to the right of the city of Lexington to make said subscription, the Act provided, among other things, that the mayor and general council of the city of Lexington shall, by order, submit the question of subscription to a vote of the legal voters of said city, at an election, etc.; and if a majority of the votes cast at said election shall

be in favor of the proposed subscription, then it shall be made, etc.    The mayor and general council of said city did, by order, submit the question to the "legal voters" of said city, whether or not one hundred thousand dollars should be subscribed to the capital stock of the appellee, which, in the opinion of the proper city authorities, resulted in favor of the subscription and in the issual of the city bonds to the appellee.

It is not contended by the appellants that the order of the mayor and city council, submitting the question of subscription to the "legal voters of the city," was in any particular irregular or void; but it is that the mayor of the city, on the morning of the day of the election and before the hour of voting had arrived, issued a circular to the officers of the election, which they received and by which they were governed, informing them that no payment of poll-tax was required of the voters at the election to be held that day in order to entitle them to vote at the election, if they were otherwise qualified, under the general State law, to vote; that as the law required the payment of a poll-tax and a registration by each citizen, in order to entitle him to vote at city elections; and as all citizens of the city, without regard to their having paid their poll-tax, and who were entitled to vote at a State election, were allowed to vote at said election, the election was void and conferred no power upon the city to issue bonds to the appellee.

It appears that three thousand one hundred and eighty-five votes were cast at said election, and only two thousand three hundred and seven of which were legal votes. The appellants claim that, receiving the illegal votes by the officers of the election upon the authority of the

mayor, vitiated the election upon the ground that the
submission was not legal, therefore the election was void.
It is conceded that the submission to legal voters, in all
cases, is a condition precedent to a valid election; but
the receiving of illegal votes by the officers of the elec-
tion, who have no authority to order an election, is
wholly a different question. For if the election has been
legally ordered, the condition precedent to a valid elec-
tion has been complied with; and if the officers of the
election violate the law in receiving illegal votes, and
such illegal votes can be eliminated and the true result
of the legal votes ascertained, the election is not invalid,
but it will be upheld.

Upon that subject Mr. Dillon on Municipal Corpora-
tions, section 138, and McCrary on Elections, section
444, correctly, as we think, lay down the proper rule.
The former says: " Receiving illegal or improper votes
will not alone vitiate an election. It must be shown
affirmatively, in order to overturn the declared result,
that the wrongful action changed it." The latter says:
" It is not a valid objection to an election that illegal
votes were received, if they did not change the result.
If, therefore, a number of legal voters withdraw from an
election, and decline to vote upon the ground that illegal
votes are being received, they do so at their peril and
take the chance of being able afterwards to show that such
illegal votes were large enough to change the result." He
also says, section 305: " It is impossible to define exactly
the degree of irregularity and illegality in the conduct of
an election which will render it void; but perhaps the
best rule upon the subject is this: If the voice of the
electors can be made to appear from the returns, either

alone or aided by extrinsic evidence, with reasonable clearness and certainty, then the election should stand, but not otherwise. This rule has made necessary another, viz: That if it appear that illegal votes have been admitted, it is the first duty of the tribunal trying the contest to purge the poll of such illegal votes, if there is evidence upon which this can be done, and effect should be given to the majority of. the good voters."

Now, the circular of the mayor to the officers of the election was not a part of the submission of the question to the voters of the city. He had no legal authority to issue the circular; his advice to. the officers was not binding upon. them; it amounted to no more than the advice of any citizen upon the subject. The action of the officers in receiving illegal votes was not based upon the submission of the question, but upon the advice of a person that had no authority upon that subject. The submission was, therefore, legal. Nor does it appear from the petition that the majority of the votes cast were illegal votes. On the contrary, it appears from the petition that not half of the votes cast at the election were illegal votes; nor does it appear from the petition that a majority of the legal votes cast was not for the subscription. It is clear that it could have been ascertained, with judicial certainty, how many legal votes were cast for and against this subscription, and the appellants' silence upon that subject creates the presumption that the subscription obtained a majority of the legal votes, and the declared result was in accordance with that vote. It is also alleged that the appellee "did, by the payment of money, and by the use of corrupt and illegal means, entice, persuade, influence and bribe a large number of

voters—both those who were, and those who were not at the time, legal voters of the city of Lexington—to vote in favor of such subscription." * * * That the majority of the voters, who voted at said election in favor of the subscription, were not unbribed."

The expression "a large number of voters," means any number that the draftsman may have upon his mind, viz: five, ten, a hundred, etc.; but it does not mean that a majority of the legal votes cast for the subscription were bribed to vote for it. Also, the expression that the majority of those voting in favor of the subscription "were not unbribed," is not equivalent to an allegation that a majority of those voting in favor of the subscription were bribed. The allegation is only, at most, an implied or indirect charge; it is not equivalent to direct charge of bribery, made in plain and concise language, as the Civil Code requires.

The judgment sustaining the demurrer to the petition is affirmed.